No. 2--01--0125 

________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

________________________________________________________________

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of Lake County.

)

Plaintiff-Appellee, )

) Nos. 99--CF--3023

                                )       00--CF--1672

v. )

)

ROMMEL REYES, ) Honorable

) Victoria A. Rossetti,

Defendant-Appellant. ) Judge, Presiding.

________________________________________________________________

JUSTICE BYRNE delivered the opinion of the court:

Defendant, Rommel Reyes, appeals the trial court's findings that he violated his probation and was guilty of the offense of false personation of a peace officer (720 ILCS 5/32--5.1 (West 2000)).  Defendant contends (1) that the trial court erred in denying his motion to quash his arrest and suppress evidence and (2) that the evidence was insufficient to support either the finding that he violated his probation or the finding that he was guilty of committing the offense.  For the reasons that follow, we affirm.

To aid in understanding the issues that defendant raises in his appeal, we first briefly review the procedural background to the appeal.  On March 20, 2000, in case No. 99--CF--3023, pursuant to a negotiated agreement, defendant, who was a Waukegan police officer at the time, pleaded guilty to charges of official misconduct (720 ILCS 5/33--3(b) (West 2000)) and criminal sexual abuse (720 ILCS 5/12--15(a)(1) (West 2000)).  For these offenses, defendant was placed on felony probation for a period of 24 months.

On June 6, 2000, a Libertyville police officer stopped a motor vehicle that defendant was driving.  At the time of the stop, defendant was no longer a Waukegan police officer but was still on probation.  Based on defendant's conduct during the stop, the officer arrested defendant and issued a citation charging defendant with false personation of a peace officer.  The State subsequently charged defendant by information with the offense of false personation of a police officer and also filed a petition to revoke defendant's probation in case No. 99--CF--3023 on the ground that defendant had committed the offense of false personation of a peace officer.  Defendant later filed a motion to quash his arrest and to suppress evidence.  The trial court denied the motion.

The State elected to proceed first with a hearing on the petition to revoke probation.  Following the hearing, the trial court found that the State had proved by a preponderance of the evidence that defendant violated his probation when he committed the offense of false personation of a peace officer by falsely impersonating a police officer.

The parties then agreed to proceed by stipulated bench trial with respect to the charge against defendant of false personation of a peace officer.  The parties agreed that the evidence at the stipulated bench trial would be the same evidence that was presented at the hearing on the petition to revoke probation.  Following the stipulated bench trial, the trial court found that defendant was guilty beyond a reasonable doubt of false personation of a peace officer.

After a sentencing hearing, the trial court sentenced defendant to intensive probation for a period of 30 months with various conditions, 18 months of periodic imprisonment, and 300 hours of public service.  Defendant's timely notice of appeal followed.

We now turn to the issues that defendant raises on appeal.  Defendant initially contends that the trial court erred in denying his motion to quash his arrest and suppress evidence.  At a hearing on the motion, the State advised the trial court that the parties' understanding of the motion was that it applied only to the events that occurred during the period from when the officer first saw defendant's vehicle until the stop of the vehicle.  Because of this understanding, much of the evidence that is relevant to defendant's motion to quash arrest and suppress evidence is distinct from the evidence that is relevant to the other issues that defendant raises.  We will therefore first set out the facts specifically relevant to the issue of whether the trial court erred in denying defendant's motion and will resolve that issue before proceeding, if necessary, to set out the relevant facts and address the other issues that defendant raises.

At the hearing on the motion, defendant testified that on June 6, 2000, at around 1:30 a.m., he was driving his car, a white GMC Jimmy, northbound on Route 45 when a Libertyville police officer stopped his car.  Defendant asserted that, to the best of his knowledge, he was in compliance with all the traffic laws and other criminal laws of the State of Illinois at the time of the stop.

On cross-examination, defendant maintained that he was going between 45 and 52 miles per hour before the stop and denied that he was driving at a speed of over 60 miles per hour before the stop.  Defendant acknowledged that he accompanied the officer who stopped him to the rear of his car where the officer pointed out that the rear license plate light was not on.

Brian Bone, a Libertyville police officer, testified that at about 1:30 a.m. on June 6, 2000, he was on duty in his squad car patrolling a stretch of Route 45 where the speed limit was 55 miles per hour.  Bone observed a white GMC Jimmy coming toward him on Route 45 at a high rate of speed.  Bone activated his radar unit but was not able, at first, to get a radar reading on the Jimmy's speed because another vehicle that was near the Jimmy was moving at about the same speed as the Jimmy.  Following his initial observation of the cars traveling at a high rate of speed, Bone observed that the brake lights were activated on both the Jimmy and the other car.  After that, Bone was able to get a reading on the Jimmy with his radar unit.  The radar reading indicated that the Jimmy was traveling 60 miles per hour.

After getting the radar reading on the Jimmy, Bone made a U-turn so that he was traveling northbound on Route 45, the same direction as the two cars.  Bone then observed that there was no rear license plate light illuminating the license plate on the Jimmy.  After observing the unlit rear license plate light, Bone activated the emergency lights on his squad car and stopped the Jimmy.  When the Jimmy stopped, Bone looked more closely at the rear license plate light and confirmed that it was not on.  Defendant was the driver and sole occupant of the Jimmy.

On cross-examination, Bone acknowledged that he did not issue a traffic citation to defendant for speeding but only for having an unlit rear license plate light.  In the year and a half that he had been assigned to traffic duty, Bone had made hundreds of traffic stops.  Bone estimated that only about 10 of the stops were for nothing more than an unlit rear license plate light.

Following the hearing, the trial court found that Bone had a sufficient basis to stop defendant's car because Bone reasonably suspected that defendant had violated two traffic laws.  The court stated that the suspected violations were speeding and driving at night with an unlit rear license plate light.

On appeal, defendant contends that the trial court's ruling was against the manifest weight of the evidence.  Defendant focuses almost exclusively on the propriety of the stop with respect to the suspected speeding violation.  Defendant virtually ignores the suspected unlit rear license plate light violation.

We initially note our standard of review.  Traditionally, when  a trial court's ruling on a motion to suppress evidence involved factual determinations and credibility assessments, a reviewing court would not reverse the trial court's ultimate ruling unless it was manifestly erroneous.  
People v. Sorenson
, 196 Ill. 2d 425, 430-31 (2001).  This deferential standard of review was grounded in the reality that the trial court was in a superior position to determine and weigh the credibility of the witnesses, to observe the demeanor of the witnesses, and to resolve conflicts in the testimony of the witnesses.  
Sorenson
, 196 Ill. 2d at 431.  However, our supreme court has recently decided that, when a motion to suppress involves a question of probable cause or reasonable suspicion, a reviewing court should apply a 
de
 
novo
 standard of review to the trial court's ultimate finding with respect to probable cause or reasonable suspicion.  
Sorenson
, 196 Ill. 2d at 431.  We will therefore accord great deference to the trial court's factual findings and reverse those findings only if they are against the manifest weight of the evidence; however, we will review 
de
 
novo
 the ultimate question of defendant's legal challenge to the denial of his motion to quash arrest and suppress evidence.  See 
Sorenson
, 196 Ill. 2d at 431.

In this case, the trial court found that, when Bone stopped defendant, Bone had sufficient reason to believe that defendant was violating or had violated two traffic laws.  The suspected violations were speeding and driving with an unlit rear license plate light.

Officer Bone testified that he got a radar reading on defendant's car showing that defendant was driving at 60 miles per hour.  The radar reading was taken after defendant had slowed down.  The speed limit was 55 miles per hour.  The trial court apparently found Bone's testimony to be credible.  Defendant does not really contest the finding that his rear license plate late was unlit.  Based on this record, we cannot say that the trial court's finding that Officer Bone had sufficient reason to believe that defendant had committed two traffic violations was against the manifest weight of the evidence.

We next consider whether Officer Bone's reasonable suspicions that defendant had committed two traffic violations were a sufficient  basis for Bone to stop defendant's car.  A lawful traffic stop requires a reasonable suspicion that the vehicle stopped is subject to seizure for a violation of law.  
Delaware v. Prouse
, 440 U.S. 648, 663, 59 L. Ed. 2d 660, 673, 99 S. Ct. 1391, 1401 (1979).  Therefore, a police officer who observes a vehicle violate a traffic law may lawfully stop the vehicle.  
People v. Gonzalez
, 184 Ill. 2d 402, 413 (1998).

Here, Officer Bone observed defendant's car violate two traffic laws.  First, Officer Bone observed defendant's car speeding (see 625 ILCS 5/11--601(b) (West 2000)).  Second, Officer Bone observed that the rear license plate light on defendant's car was unlit (see 625 ILCS 5/12--201(c) (West 2000)).  Based on Officer Bone's observations of these traffic law violations, we conclude that his stop of defendant's car was a lawful traffic stop.  Accordingly, the trial court did not err in denying defendant's motion to quash his arrest and to suppress evidence.

Defendant next contends that the trial court erred in finding him in violation of his probation and in finding him guilty of committing the offense of false personation of a peace officer.  Defendant argues that the evidence was insufficient to support these findings.

At the hearing on the petition to revoke probation, Officer Bone testified that after he stopped defendant's car he explained the violations to defendant and examined defendant's driver's license.  Defendant told Bone that he believed that the rear license plate light on his car was working because he had just gotten his car back from the shop.  Bone and defendant then walked together to the rear of defendant's car to check the light.  While they were walking, defendant asked Bone if he knew a Mundelein police officer named Gorski.  Bone responded that he did not know Gorski personally but knew the name.  Defendant then told Bone that Gorski would know defendant because defendant had dealt with Gorski with regard to an accident that had resulted in defendant's car being in the shop.

Bone further testified that, after defendant returned to the driver's side of his car, defendant asked Bone if Bone knew an individual named Joe Garcia who used to work for the Libertyville police department.  Bone responded that he knew Garcia and that Garcia had worked as a community service officer with the Lincolnshire police department before being hired by the McHenry County sheriff's department.  Bone's testimony continued as follows:

"Q.   What did the defendant say?

A.   The defendant stated that he worked -- or, 'I work with Joe Garcia,' which is the Waukegan 
police officer.

Q.   Did he say -- well, strike that.  What did you say or what did he state next?

A.   I said, 'Really?  You're a police officer?'  And he stated yes, he was a police officer.

Q.   Did he specifically say, 'I'm a Waukegan 
cop?'

A.   Yes he did."

Bone further testified that he then asked defendant if he had any identification, such as a badge or identification card, that a police department would issue to identify its sworn officers.  Defendant responded that he did not have a badge with him because he had just completed a field training program for new officers.  Defendant explained that he had not purchased a badge to carry while he was off duty because of the cost of such a badge.  Defendant also stated that he did not have his identification card with him because he had left it at home.

Bone further testified that, after defendant explained why he did not have a badge or identification card with him, defendant then stated, " 'But I am a police officer' " and pointed toward a Fraternal Order of Police (FOP) member medallion that was on the rear bumper of his car and a FOP member sticker that was on his windshield.

Before defendant got back into his car, defendant asked Bone if he knew a person named Chris Dador.  Bone responded that he knew Dador because he had worked with Dador when he, Bone, was a Lake County sheriff's deputy.  Defendant then told Bone that he had gone to the police academy with Chris Dador's brother, Al Dador.  Bone testified that defendant stated that Chris and Al Dador "know I work for Waukegan."

Bone further testified that he then contacted the Libertyville police dispatcher to have a routine check done on defendant's driver's license and to have the dispatcher call the Waukegan police department to determine whether defendant was in fact a police officer there.  The dispatcher advised Bone that defendant was not employed as a police officer with the Waukegan police department.  After obtaining this information, Bone returned to defendant's car and again spoke with defendant.

Bone further testified "I asked him again, I asked him if he is a Waukegan police officer, and he stated yes, I am a Waukegan police officer.  And I again restated are you -- are you a Waukegan police officer?  He again stated that he is a Waukegan police officer." Defendant then pointed toward a black nylon briefcase that was on the passenger seat of his car and "stated that he had all his documentation and the various paperwork from the Waukegan Police Department that shows that he is in fact a Waukegan police officer."

Bone then confronted defendant with the information from the dispatcher indicating that defendant was not a Waukegan police officer.   Bone testified that defendant then stated, " 'Well, actually I'm a part-time officer there.  I still hold the title as patrol officer, though I am a computer consultant at this time.' "  Bone reiterated that defendant stated that he continued to hold the official title of police officer.

Bone further testified that he then asked defendant how he could continue to hold the title of police officer if he, defendant, was a registered sex offender.  Defendant then stated that "he had been fucked over by the Waukegan Police Department and he in fact did not want to work with them anymore."

Bone testified that defendant then consented to a search of his car.  The search revealed a business card that stated that defendant was a police officer.  The business card was introduced into evidence along with the FOP medallion that was on the bumper of defendant's car.

On cross-examination, Bone acknowledged that the business card did not have a date on it.  Bone also acknowledged that he did not observe defendant passing out any business cards and that defendant never asked for leniency on the ground that he was a police officer.

After Bone finished testifying, the parties stipulated that if the Waukegan police chief was called to testify his testimony would be that, at one time, defendant had been a police officer with the Waukegan police department but that on June 6, 2000, the department no longer employed defendant in any capacity.  At the State’s request, the trial court then took judicial notice of the sentencing order in case No. 99--CF--3023 showing that defendant had been placed on probation in that case for the offenses of official misconduct and criminal sexual abuse.

Defendant then testified as a witness on his own behalf.  Defendant testified that on June 6, 2000, at about 1:30 a.m., he was driving home from work when Officer Bone stopped his car.  Defendant acknowledged that after he and Bone walked to the rear of his car to check to see if the rear license plate light was on he asked Bone if Bone knew Officer Gorski.  Defendant explained that he mentioned Gorski because Gorski had taken an accident report involving defendant's car and defendant thought Gorski could verify the accident.  

Defendant also testified that Officer Bone pointed to the FOP medallion on his car and then asked defendant "Are you a cop?"  Defendant responded, in the past tense, "yes, I was."  When Bone asked defendant where he had been a police officer, defendant responded, in the past tense, that he had been a police officer in Waukegan and had worked with Joe Garcia.  Further conversation about Joe Garcia ensued.

Defendant further testified that Bone asked him if he had a badge or an ID with him.  Defendant responded, " 'no, I don't have it on me, it's with the department.' "  Defendant explained that he meant that after he resigned from the Waukegan police department the department had kept his badge and ID.  Defendant denied that he ever told Officer Bone that he, defendant, was currently a member of the Waukegan police department.

On cross-examination, defendant admitted that the business card stating that he was a Waukegan police officer was his.  Defendant also agreed that he had no difficulty talking to Officer Bone.

Following the hearing, the trial court found that the State had proved by a preponderance of the evidence that defendant violated his probation by falsely impersonating himself to Officer Bone as a police officer.  The parties then agreed that the matter would proceed to a stipulated bench trial to determine whether defendant was guilty of committing the offense of false personation of a peace officer.  The parties agreed that the evidence that was presented at the hearing on the petition to revoke probation would constitute the evidence at the stipulated bench trial and that the proceedings with respect to the motion to quash arrest and suppress evidence would also apply to the stipulated bench trial.  The trial court then found that defendant was guilty of committing the offense of false personation of a peace officer beyond a reasonable doubt.  The trial court later denied defendant's motion for a new trial.

Following a sentencing hearing, the trial court sentenced defendant to 30 months of intensive probation with various conditions, 18 months of periodic imprisonment, and 300 hours of community service.  Defendant's timely notice of appeal followed.

On appeal, defendant contends that the evidence was insufficient to prove either that he committed the offense of false personation of a peace officer or that he violated his probation.  With respect to both contentions, defendant posits that the testimony of Officer Bone was equivocal as to whether defendant's statements to Bone regarding being a police officer were in the past tense or the present tense.  Defendant asserts that his own testimony regarding the statements unequivocally shows that he referred to being a police officer only in the past tense.  Defendant argues that the equivocal nature of Bone's testimony with respect to the tense of the statements is enough to show that the evidence was insufficient.  Alternatively, defendant argues that, even if Bone's testimony was sufficient to show that defendant claimed he was presently a police officer, he is entitled to a reversal because the alleged impersonation was not the type of impersonation that is contemplated by the statute that prohibits the false personation of a peace officer.

In a criminal case, the State has the burden of establishing beyond a reasonable doubt the essential elements of the offense that the defendant is charged with committing.  
People v. Sanford
, 24 Ill. 2d 365, 368 (1962).  In proceedings to determine whether a defendant violated a condition of his probation, the State need only prove its allegations by a preponderance of the evidence.  730 ILCS 5/5--6--4(c) (West 2000); 
People v. Goleash
, 311 Ill. App. 3d 949, 955 (2000).

We will first determine whether the evidence in the criminal case that the State brought against defendant was sufficient to prove defendant's guilt beyond a reasonable doubt.  When considering a challenge to the sufficiency of the evidence in a criminal case, it is not the function of a reviewing court to retry the defendant.  
People v. Collins
, 106 Ill. 2d 237, 261 (1985).  Rather, the relevant question is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Collins
, 106 Ill. 2d at 261.  The trier of fact has the responsibility to determine the credibility of the witnesses, to resolve conflicts or inconsistencies in their testimony, to assess the weight to be given to their testimony, and to draw reasonable inferences from all the evidence.  See 
People v. Heard
, 187 Ill. 2d 36, 84 (1999); 
People v. Frieberg
, 147 Ill. 2d 326, 360 (1992).  A reviewing court should not reverse a criminal conviction unless the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of the defendant's guilt.  
People v. McDonald
, 168 Ill. 2d 420, 444 (1995).

Section 32--5.1 of the Criminal Code of 1961 (720 ILCS 5/32--5.1 (West 2000)) sets out the elements of the offense of false personation of a peace officer.  Section 32--5.1 provides:

"A person who knowingly and falsely represents himself to be a peace officer of any jurisdiction commits a Class 4 felony."  720 ILCS 5/32--5.1 (West 2000).

In this case, there was conflicting evidence as to whether the statements that defendant made to Officer Bone regarding being a police officer were phrased in the present tense or in the past tense.  Viewing this evidence in the light most favorable to the State, the trial court could have resolved these conflicts by determining that defendant made the statements in the present tense.  In addition, Officer Bone testified that defendant made statements regarding his not having a badge or identification card.  Although defendant attempted to explain these statements by testifying that he meant that the Waukegan police department had taken his badge and identification card, the trial court could have found defendant's explanation not to be credible.  Furthermore, Officer Bone testified that, after he confronted defendant with the information from the dispatcher, defendant made statements to the effect that he was still a police officer but was only working part time.  Defendant did not offer any explanation for those statements.  Based on all the testimony and the other evidence, such as the business card and the FOP medallion, we conclude that the evidence was sufficient to prove beyond a reasonable doubt that defendant committed the offense of false personation of a peace officer.

We now turn to defendant's alternative contention that, even if the evidence was sufficient to show beyond a reasonable doubt that he knowingly falsely impersonated a police officer, his conviction nonetheless should be reversed because the impersonation was not the type of impersonation contemplated by section 32--5.1.  In support of this contention, defendant first argues that merely making the claim of being a police officer is not enough to satisfy the elements of the offense because there is a corollary requirement that the person making the claim must also have sought to gain something of value through the impersonation.  Defendant maintains that he never sought to gain something of value in impersonating a police officer but, at most, engaged in mere "puffing."

Defendant cites a federal case, 
United States v. Rippee
, 961 F.2d 677 (7th Cir. 1992), in support of this argument.  However, 
Rippee
 is inapposite because it involved a federal statute that contained an express element requiring that the impersonator "demands or obtains any money, paper, document, or thing of value."  
Rippee
, 961 F.2d at 678.  Unlike the federal statute at issue in 
Rippee
, section 32--5.1 does not contain any such express element.  Moreover, defendant has not provided any authority that convinces us that such an element should be read into section 32--5.1.  If  the legislature had wanted to include such an element in section 32--5.1, we believe it simply would have done so.  For these reasons, we conclude that defendant's argument regarding the corollary requirement fails.

We note parenthetically that, even if, 
arguendo
, an element regarding seeking something of value was part of the offense of false personation of a peace officer, the evidence in this case would have been sufficient to satisfy such an element.  Although defendant asserts that his false representation that he was a police officer was mere puffing, we believe that the trial court  reasonably could have inferred that defendant, through the personation, sought to avoid a traffic ticket.  That plainly is something of value.  See 
Rippee
, 961 F.2d at 679.

Finally, defendant argues that his conviction should be reversed because his false representation that he was a police officer did not constitute conduct that was within the scope of the harm that section 32--5.1 was intended to prevent.  In support of this argument, defendant relies on 
People v. Ellis
, 296 Ill. App. 3d 862, 866 (1998), where the court in construing section 32--5.1 stated that "[t]he statute exists to protect citizens who would be harmed or deceived by those acting under the color of authority." 

We agree with the State that defendant's reliance on 
Ellis
 is misplaced.  Nothing in 
Ellis
 indicates that the purpose of section 32--5.1 as stated therein is the only purpose of the statute or that there must be the possibility of harm to a citizen in order for a person to be guilty of the offense.  Consequently, we are not persuaded by defendant's argument.

For all these reasons, we conclude that the evidence was sufficient to prove beyond a reasonable doubt that defendant committed the offense of false personation of a peace officer.  Because the evidence was sufficient to prove beyond a reasonable doubt that defendant committed the offense of false personation of a peace officer, and in view of the lower standard of proof in a probation revocation proceeding, where grounds for revocation need only be proved by a preponderance of the evidence, we also conclude that the evidence was sufficient to prove that defendant violated his probation by committing the offense of false personation of a peace officer while on probation.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

McLAREN and BOWMAN, JJ., concur.