Affirmed by published opinion. Judge WILKINSON wrote the majority opinion, in which Chief Judge TRAXLER joined. Judge WYNN wrote a dissenting opinion.
*391 OPINION
WILKINSON, Circuit Judge:
The Virginia police impersonation statute, Virginia Code § 18.2-174, prohibits individuals from falsely assuming or pretending to be a law enforcement officer. In this case, appellant asks us to hold the statute facially unconstitutional under the First Amendment. For the reasons that follow, we decline the invitation and affirm the judgment of the district court.
I.
On October 6, 2009, Douglas Chappell was stopped for speeding by a U.S. Park Police Officer on the George Washington Memorial Parkway. In an attempt to avoid a speeding ticket, Chappell falsely told the officer that he was a Fairfax County Deputy Sheriff. In fact, Chappell had not been employed by the Fairfax County Sheriffs Office for approximately one year.
The officer asked Chappell for his law enforcement credentials, and Chappell replied that he had left them at home. He then produced his Virginia driver’s license, pointing out accurately- — that the license photo depicted him in uniform. In order to verify Chappell’s employment, the officer called the Fairfax County Sheriffs Office, which requested an employee identification number. When asked for his employee identification number, Chappell made one up. He subsequently admitted his lie and was arrested for impersonating a police officer.
Chappell was charged in the U.S. District Court for the Eastern District of Virginia with impersonating a police officer in violation of 18 U.S.C. § 13 — which makes Virginia Code § 18.2-174 applicable to conduct occurring on the George Washington Memorial Parkway — and with speeding. After the magistrate judge denied Chappell’s motion to dismiss the impersonation charge under the First Amendment, the parties proceeded to a bench trial. Chappell then pled guilty to speeding and was convicted of the impersonation charge. The magistrate judge imposed a $120 fine on the speeding charge. He imposed a sentence of six months probation, along with 40 hours of community service and a $250 fine, on the impersonation charge. Defendant appealed the magistrate judge’s rulings to the district court, which affirmed the rulings on all grounds. This appeal followed.
II.
On appeal, Chappell contends that Virginia Code § 18.2-174 violates the Free Speech Clause of the First Amendment. The statute provides:
Any person who shall falsely assume or exercise the functions, powers, duties and privileges incident to the office of sheriff, police officer, marshal, or other peace officer, or who shall falsely assume or pretend to be any such officer, shall be deemed guilty of a Class 1 misdemeanor.
Va.Code Ann. § 18.2-174. Chappell was not punished under the clause forbidding individuals from “falsely assuming] or exercising] the functions, powers, duties and privileges” of a law enforcement officer. He was convicted under the clause that prohibits “falsely assuming] or pretending] to ’be any such officer,” and his challenge focuses solely on this second clause. According to Chappell, this clause is unconstitutionally overbroad because it bans a substantial amount of protected speech. In addition, Chappell argues that the statute cannot survive strict scrutiny because the second clause is a content-based speech restriction and is not narrowly tailored. Without contending that § 18.2-174 is unconstitutional as applied to *392 him, Chappell asks us to strike the law down on its face.
A.
As the Supreme Court has repeated, facial invalidation of legislation is disfavored. See, e.g., Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 450, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008) (“Facial challenges are disfavored for several reasons.”); Nat’l Endowment for the Arts v. Finley, 524 U.S. 569, 580, 118 S.Ct. 2168, 141 L.Ed.2d 500 (1998) (“[F]acial challenges to legislation are generally disfavored[.]” (citation omitted)). Because “[c]laims of facial invalidity often rest on speculation];,] ... they raise the risk of ‘premature interpretation of statutes on the basis of factually barebones records.’ ” Wash. State Grange, 552 U.S. at 450, 128 S.Ct. 1184 (quoting Sabri v. United States, 541 U.S. 600, 609, 124 S.Ct. 1941, 158 L.Ed.2d 891 (2004)). Facial invalidation is also contrary to principles of judicial restraint, under which “courts should neither ‘anticipate a question of constitutional law in advance of the necessity of deciding it’ nor ‘formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.” ’ Id. at 450-51, 128 S.Ct. 1184 (quoting Ashwander v. TVA 297 U.S. 288, 346-47, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandéis, J., concurring)). Finally, “facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution.” Id. at 451, 128 S.Ct. 1184.
Chappell presents us with a particularly inappropriate case for recognizing a challenge of facial invalidity. First, the Virginia impersonation statute has a plainly legitimate sweep. By protecting unsuspecting citizens from those who falsely pretend to be law enforcement officers, the statute serves the Commonwealth’s critical interest in public safety. See, e.g., People v. Ellis, 296 Ill.App.3d 862, 231 Ill.Dec. 272, 696 N.E.2d 1, 3 (1998) (noting that a state impersonation statute “exists to protect citizens who would be harmed or deceived by those acting under the color of authority”). Crucially, the second clause of § 18.2-174 prohibits dangerous conduct — such as pretending to be a law enforcement officer in order to board an airplane — that might not fall under the first clause. And it is easy to envision how just pretending to be a police officer could — without more — assist an individual in gaining entrance to a home or abducting a child. In addition to promoting public safety, the statute deters individuals from pretending to be police officers in an attempt to evade fines, incarceration, and other state-imposed sanctions. The Virginia statute and others like it have regularly been employed in service of these important interests. See, e.g., United States v. Jackson, 163 F.3d 599, 1998 WL 609705, at *3 (4th Cir. Sept. 1, 1998); English v. Commonwealth, 43 Va.App. 370, 598 S.E.2d 322, 324 (2004); People v. Reyes, 328 Ill.App.3d 918, 263 Ill.Dec. 614, 768 N.E.2d 374, 384 (2002).
Second, Chappell is right at the core of the Virginia impersonation statute’s plainly legitimate sweep. After falsely informing the Park Police Officer that he was a Deputy Sheriff, Chappell furthered the misrepresentation by stating that he left his credentials at home, by pointing out that his driver’s license photo depicted him in uniform, and by making up a false employee identification number. As demonstrated by these undisputed facts, there is no question that Chappell tried to dodge a traffic ticket by “falsely assuming] or pretending] to be” a law enforcement officer. Chappell even conceded before the district court that he “briefly claimed to be a *393 police officer in a failed attempt to avoid a speeding ticket.” J.A. 117. This is precisely the kind of conduct that the statute was designed to prohibit.
Chappell does not even bring an as-applied challenge to his conviction, perhaps in recognition of the frivolousness of such a claim. Instead, in an effort to distract attention from his place at the heart of the statutory prohibition, Chappell hypothesizes the rights of third parties, arguing that the statute is facially unconstitutional under the First Amendment because it “criminalizes the behavior of adults who attend costume parties dressed as a police officer, children playing cops and robbers, and actors portraying law enforcement officials.” Appellant’s Br. at 17.
It is telling that these are the only hypotheticals appellant can conjure up. Of course, it is ludicrous to suggest that costumed party-goers, children, and actors will be prosecuted for pretending to be police officers. Despite acknowledging that a number of states “have impersonation statutes like that of Virginia,” Appellant’s Supp. Reply Br. at 2-3 n.l, Chappell does not point to a single case — in Virginia or elsewhere — where such a statute has been construed to cover his posited hypothetical. We decline to facially invalidate § 18.2-174 just because Chappell can conceive of far-fetched applications involving innocent behavior.
The government suggests that § 18.2-174 would not even apply to these hypotheticals because the word “falsely” adds a mens rea requirement to the statute. Chappell disagrees, arguing that “falsely’ simply means “not true” and does not suffice to add a mens rea element. Chappell’s argument is misplaced. The Supreme Court’s recent decision in United States v. Alvarez makes clear that courts must “construe statutes ‘in light of the background rules of the common law, ... in which the requirement of some mens rea for a crime is firmly embedded.’ ” — U.S. -, 132 S.Ct. 2537, 2553, 183 L.Ed.2d 574 (2012) (Breyer, J., concurring in the judgment) (quoting Staples v. United States, 511 U.S. 600, 605, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994)). Moreover, the word “falsely” expressly fulfills this function. Id. (reading the Stolen Valor Act, which criminalized “falsely representing]” oneself as the recipient of certain military decorations, as proscribing “only false factual statements made with actual knowledge of their falsity and with the intent that they be taken as true”); see also id. at 2557 n. 1 (Alito, J., dissenting) (“The Act’s use of the phrase ‘falsely represents’ ... connotes a knowledge requirement.”).
Moreover, there is no doubt that Chappell intended to deceive the Park Police Officer. There was no unwitting falsehood here. Chappell’s argument, once again, draws attention to the considerable lengths to which he will go to distract attention from his own conduct. But litigating the rights of others poses problems of standing because these hypothetical third parties have suffered no injury in fact, nor are they able to present a concrete case or controversy, as the purported innocents are purely imaginary. See, e.g., City of Los Angeles v. Lyons, 461 U.S. 95, 101-02, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); Flast v. Cohen, 392 U.S. 83, 94-95, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).
Our friend in dissent argues that the Supreme Court’s decision in Alvarez, which invalidated a statute not as facially overbroad but rather on general facial grounds, “binds us” to the same analysis and result here. See post at 402-03. It is difficult to understand why that would be so. Alvarez’s holding that the Stolen Val- or Act was facially invalid .in no way repeals the Supreme Court’s repeated cautions against striking down legislation on *394 its face. The Court explained in United States v. Stevens just two terms ago, for instance, that “[t]o succeed in a typical facial attack, [a party] would have to establish ‘that no set of circumstances exists under which [a statute] would be valid,’ or that the statute lacks any ‘plainly legitimate sweep.’ ” — U.S. ——, 130 S.Ct. 1577, 1587, 176 L.Ed.2d 435 (2010) (citations omitted). Here, of course, there is little question that § 18.2-174 has a “plainly legitimate sweep” and that “circumstances exist[] under which [the statute] would be valid” because the Supreme Court has said so in Alvarez itself: all nine justices affirmed that the federal officer impersonation statute, 18 U.S.C. § 912, is constitutional. 132 S.Ct. at 2546-47 (plurality opinion); id. at 2554 (Breyer, J., concurring in the judgment); id. at 2561-62 (Alito, J., dissenting).
Alvarez thus in no way gives this court license to simply ignore the many legitimate applications that a statute such as § 18.2-174 possesses. And it in no way permits us to ignore the Court’s declaration in the very same opinion that government impersonation and identity theft statutes are very different from the Stolen Valor Act and therefore less susceptible to a “disfavored” facial challenge, Wash. State Grange, 552 U.S. at 450, 128 S.Ct. 1184. The dissent repeatedly dismisses all this as Supreme Court dicta, but inconvenient Supreme Court statements may not be so easily wished away.
B.
Failing in his general facial challenge, Chappell heads for the lifeboat of over-breadth doctrine. However, this case is not appropriate for overbreadth analysis, and even if it were, Chappell’s challenge would still fail.
Overbreadth refers to a particular subset of facial challenges to statutes. Whereas many facial challenges, such as that in Alvarez, allege that a statute at issue is unconstitutional in all its applications, overbreadth challenges are pursued by those such as Chappell to whom the statute is unquestionably valid as applied. See Stevens, 130 S.Ct. at 1587; Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 503, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985).[1] Generally, an individual to whom a statute may constitutionally be applied may not challenge that statute on behalf of third parties. New York v. Ferber, 458 U.S. 747, 767, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). The First Amendment over-breadth doctrine, however, carves out a narrow exception to the general rule. See, e.g., Ferber, 458 U.S. at 768, 102 S.Ct. 3348; Broadrick v. Oklahoma, 413 U.S. 601, 611-12, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). The overbreadth doctrine is predicated on “a judicial prediction or assumption that the statute’s very existence may cause others not before the court to refrain from constitutionally protected speech or expression.” Broadrick, 413 U.S. at 612, 93 S.Ct. 2908. For this reason, the Supreme Court has “allowed persons to attack overly broad statutes even though the conduct of the person making the attack is clearly unprotected and could *395 be proscribed by a law drawn with the requisite specificity.” Ferber, 458 U.S. at 769, 102 S.Ct. 3348.
Though the Court has permitted such attacks, “the over-breadth doctrine is not casually employed.” L.A. Police Dep’t v. United Reporting Publ’g Corp., 528 U.S. 32, 39, 120 S.Ct. 483, 145 L.Ed.2d 451 (1999). “Because of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment,” the Court “[has] recognized that the overbreadth doctrine is ‘strong medicine’ and [has] employed it with hesitation, and then ‘only as a last resort.’ ” Ferber, 458 U.S. at 769, 102 S.Ct. 3348 (citation omitted). “[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge.” Members of City Council of L.A. v. Taxpayers for Vincent, 466 U.S. 789, 800, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). Rather, “there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds.” Id. at 801, 104 S.Ct. 2118 (citations omitted).
Chappell argues that the statutory clause forbidding individuals from “falsely assuming] or pretending]” to be a law enforcement officer is unconstitutionally overbroad. But because Chappell has failed to show any “realistic danger” that the Virginia impersonation statute will significantly compromise anyone’s First Amendment rights, we need not entertain his challenge. The Supreme Court’s reasoning in Members of City Council of L.A. is on point: “Appellees have simply failed to demonstrate a realistic danger that the ordinance will significantly compromise recognized First Amendment protections of individuals not before the Court. It would therefore be inappropriate in this case to entertain an over-breadth challenge to the ordinance.” Id. at 802, 104 S.Ct. 2118; see also S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm., 483 U.S. 522, 536-37 n. 15, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987). So too here. There is not a “realistic danger” that kids will be chilled out of costume parties or actors deterred from taking roles as policemen for fear of prosecution under Virginia Code § 18.2-174. For unlike in United States v. Stevens, — U.S. -, 130 S.Ct. 1577, 176 L.Ed.2d 435 (2010), where the Court worried that a statute aimed at the niche markets for dogfighting depictions and crush videos might hinder the much larger market for hunting magazines and hunting videos, see id. at 1592, there is no risk here that the statute’s very existence will cause third parties to refrain from constitutionally protected speech.
Moreover, far from significantly compromising “recognized First Amendment protections,” Virginia’s police impersonation statute prohibits a species of identity theft in which there is little or no communicative value. This class of identity theft plays “no essential part of any exposition of ideas.” Chaplinsky v. New Hampshire, 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). And it is more in the nature of conduct than speech. Chappell, for instance, did more than falsely state he was a Deputy Sheriff: he pretended to be a police officer by implying that he left his credentials at home, volunteering his driver’s license, pointing out that he was depicted in uniform in the license photo, and making up a false identification number. As the Supreme Court has repeated,
facial overbreadth adjudication is an exception to our traditional rules of practice and ... its function, a limited one at *396 the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from “pure speech” toward conduct and that conduct — even if expressive — falls within the scope of otherwise valid criminal laws....
Broadrick, 413 U.S. at 615, 93 S.Ct. 2908; see also L.A Police Dep’t, 528 U.S. at 39-40, 120 S.Ct. 483; Ferber, 458 U.S. at 770, 102 S.Ct. 3348. Because the behavior prohibited by § 18.2-174 is closer to conduct than speech, this is a particularly inappropriate case in which to entertain the “strong medicine” of an overbreadth challenge.
Furthermore, even applying the overbreadth doctrine, Chappell’s challenge has no merit. Under the overbreadth analysis, a law that restricts speech may be invalidated only if its realistic unconstitutional applications are “substantial, not only in an absolute sense, but also relative to the statute’s plainly legitimate sweep.” United States v. Williams, 553 U.S. 285, 292, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008) (emphasis in original). Neither condition is satisfied here. The statute’s legitimate sweep is considerable, and it is difficult to show a “substantial” number of unconstitutional applications when appellant does not point to even one, at least not to one that actually took place. His musings on Hollywood actors and Halloween dress do not satisfy this requirement because they are based on speculation, not actual fact. As the Court explained in Virginia v. Hicks, 539 U.S. 113, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003), “The overbreadth claimant bears the burden of demonstrating, ‘from the text of [the law] and from actual fact,’ that substantial overbreadth exists.” Id. at 122, 123 S.Ct. 2191 (emphasis added). That demonstration is absent here.
III.
A.
Chappell finally seeks support from United States v. Alvarez, which held the Stolen Valor Act, 18 U.S.C. § 704(b), facially unconstitutional as a content-based restriction on speech. — U.S.-, 132 S.Ct. 2537, 2543, 183 L.Ed.2d 574 (2012) (plurality opinion).[2] In Alvarez, a four-justice plurality declared that false statements of fact do not by themselves fall outside of the First Amendment’s scope. Id. at 2543-47. Applying exacting scrutiny, the plurality invalidated the Stolen Val- or Act because there was not an adequate causal link between the Act and the government’s interest in protecting military honors and because the Act did not represent a sufficiently narrow means of securing that interest. Id. at 2548-51. Moreover, in this context, simple counterspeech should suffice to achieve the government’s objectives. Id. at 2549-51. Justice Breyer, joined by Justice Kagan, produced the majority for invalidating the statute. Concurring in the judgment, Justice Breyer reasoned that the Stolen Valor Act worked a disproportionate harm to protected speech interests relative to the government’s interests advanced by the Act. Id. at 2555-56 (Breyer, J., concurring in the judgment). Significantly, no Justice thought it advisable to drape a broad cloak of constitutional protection over actionable *397 fraud, identity theft, or the impersonation of law enforcement officers.
Contrary to Chappell’s assertions, Alvarez supports our conclusion that § 18.2-174 is not facially invalid under the First Amendment. To begin with, the Supreme Court distinguished the Stolen Valor Act, which criminalized “pure speech,” from a number of constitutionally permissible statutes that regulate speech in a manner that “implicate^] fraud or speech integral to criminal conduct.” Id. at 2540, 2546 (plurality opinion). The Court recognized, for example, the general validity of laws prohibiting “the false representation that one is speaking as a Government official or on behalf of the Government.” Id. at 2545-46. Indeed, each of the Court’s opinions expressly confirmed the constitutionality of a law bearing striking similarities to the one before us: 18 U.S.C. § 912, the federal statute prohibiting impersonation of government officers. Id. at 2546-47; id. at 2554 (Breyer, J., concurring in the judgment); id. at 2561-62 (Alito, J., dissenting).[3] Alvarez also cites with approval another federal statute similar to the one at bar, which prohibits the “unauthorized use of the names of federal agencies such as the Federal Bureau of Investigation.” 18 U.S.C. § 709. These impersonation statutes, Alvarez explains, are constitutional because they do more than “merely restrict[ ] false speech”; they also “protect the integrity of Government processes” and “maintain the general good repute and dignity of government service itself.” 132 S.Ct. at 2546 (plurality opinion) (quoting United States v. Lepowitch, 318 U.S. 702, 704, 63 S.Ct. 914, 87 L.Ed. 1091 (1943)). Thus, far from supporting Chappell’s argument, Alvarez instead confirms that § 18.2-174 speaks to the very real problem of law enforcement impersonations and the misfortunes that can flow from them.
Moreover, to entertain a facial challenge in this case could quickly lead to a treacherous scenario of falling statutory dominoes, placing numerous federal and state impersonation statutes at risk — all in the face of the Supreme Court’s strong signals to the contrary. Federal anti-impersonation statutes encompass a variety of contexts and differ in their exact wording, but 18 U.S.C. § 911 provides an illustrative example, prohibiting one from “falsely and willfully representing] himself to be a citizen of the United States.” Accepting Chappell’s challenge might place this federal law and others like it in jeopardy. See also, e.g., 18 U.S.C. § 914 (impersonating creditors of the United States); id. *398 § 915 (impersonating foreign diplomats); id.- § 917 (impersonating Red Cross members). Whether differing impersonation statutes could be fairly distinguished from the one at hand remains an open question, but the risks appellant invites by embracing the sweeping tactic of facial statutory invalidation are apparent. In addition, a number of states have laws that proscribe the same type of law enforcement impersonation as § 18.2-174 using materially indistinguishable language. See, e.g., Kan. Stat. § 21-5917 (punishing one who “represents oneself’ as an officer); Miss.Code § 97-7-43 (punishing one who “falsely and willfully assumes or pretends to be an officer”); N.D. CentCode § 12.1-13-04 (punishing one who “falsely pretends to be” an officer). To accept Chappell’s claim in this case would call these statutes into question as well — all, again, despite the Supreme Court’s supportive statements about law enforcement anti-impersonation statutes in Alvarez.
B.
Other aspects of Alvarez reinforce our decision. As a facial matter, the Stolen Valor Act and § 18.2-174 are much different in approach. In striking down the Stolen Valor Act, the Supreme Court noted that it covered persons (such as Alvarez himself) who made false statements about military decorations without the intent to “secure employment or financial benefits.” Id. at 2542. Section 18.2-174, by contrast, prevents precisely this kind of material benefit. Even acknowledging that appellant brings only a facial claim, Chappell’s own conduct serves as an illustration of this distinction. Chappell did not make the false claim of being a police officer as mere “bar stool braggadocio,” id. at 2555 (Breyer, J., concurring in the judgment), but rather for the material purpose of avoiding a speeding ticket. Impersonation with this latter purpose bears a closer kinship to the kind of identity theft that a state can surely proscribe consistent with the First Amendment. For “[wjhere false claims are made to effect a fraud or secure moneys or other valuable considerations, ... it is well established that the Government may restrict speech without affronting the First Amendment.” Id. at 2547 (plurality opinion).
Alvarez also stresses the importance of counterspeech — suggesting an online database cataloging Medal of Honor recipients — as a disinfectant that can achieve the government’s interest in preventing lies about military honors in a less speech-restrictive manner. Id. at 2550-51. Yet the same counterspeech simply cannot “suffice to achieve” the government’s interest in this case. Id. at 2549-50. An individual who is approached by a stranger pretending to be a police officer may not have the ability, much less the time, to consult a database of actual police officers. Counterspeech may also be less than effective in cases like Chappell’s, where a person claims to be a police officer in an attempt to evade punishment. Assuming for the moment that databases of the untold numbers of local, state, and federal peace officers could be accurately maintained and productively utilized, the addition of this search may impair both the government’s legitimate desire to limit the length of detentions and the statute’s legitimate aim of deterring false representations that could lead to danger if taken as true.
Alvarez also provides support for our determination that § 18.2-174 is not susceptible to a “substantial number” of unconstitutional applications. United States v. Stevens, — U.S.-, 130 S.Ct. 1577, 1587, 176 L.Ed.2d 435 (2010) (internal quotation marks omitted). In particular, Alvarez supports our holding that § 18.2-174 *399 contains a mens rea requirement, which properly limits the scope of the statute and thereby undercuts Chappell’s claim of substantial overbreadth. See ante at 392-93. Moreover, Alvarez emphasizes that criminal statutes should not be read to proscribe representations that “cannot reasonably be interpreted as stating actual facts about an individual.” 132 S.Ct. at 2547 (plurality opinion) (quoting Milkovich v. Lorain Journal Co., 497 U.S. 1, 20, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990)). Yet this is precisely how Chappell would have us read § 18.2-174: as prohibiting a child from playing cops and robbers or an adult from donning a police officer costume at a Halloween party even though such persons “cannot reasonably be interpreted as stating” that they are “actually]” police officers. In fact, Alvarez specifically rejects one of the very hypothetical that Chappell attempts to muster in his favor: the notion that this statute might apply against an actor playing a police officer at “a theatrical performance.” 132 S.Ct. at 2547 (plurality opinion).
Finally, even if some other unconstitutional application of § 18.2-174 could be imagined notwithstanding all of the above, the logic of the controlling concurring opinion in Alvarez nevertheless underscores the need to uphold the law. See Marks v. United States, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) (noting that where there is a plurality plus a concurrence in the judgment, the holding should be viewed as the position taken by the Justices who concurred on the “narrowest grounds”). Under Justice Breyer’s proportional perspective, there are simply too many legitimate applications of § 18.2-174 to hold the law facially null. Put simply, we decline to strike down a statute that prohibits lies “that are particularly likely to produce harm.” Alvarez, 132 S.Ct. at 2554 (Breyer, J., concurring in the judgment). The statute does not proscribe all untruths about one’s occupation or accomplishments, but only lies that may trick ordinary citizens into the erroneous belief that someone is a peace officer and that may in turn “deeeive[ ]” a person into following a harmful “course of action he would not have pursued but for the deceitful conduct.” Id. at 2554 (internal quotation marks and alterations omitted).
IV.
The police function serves a significant salutary purpose in protecting public safety, but it also possesses an oppressive potential in the curtailment of liberty. Courts over time have been required to superintend this balance through Fourth Amendment reasonableness doctrine and related measures. To strike down police impersonation statutes, however, would risk expanding the oppressiveness of the police function by adding to the legitimate number of officers an untold flock of faux policemen, all without any corresponding salutary benefit. This strikes us as a complete inversion of the traditional balance courts are charged with maintaining.
In short, this is a poor case in which to facially invalidate a state statute. The Virginia statute serves the important — indeed compelling — interest of promoting public safety by prohibiting an individual from intentionally impersonating a peace officer for a broad range of improper aims, among them attempting to evade state-imposed sanctions. Chappell’s conduct is precisely what the Virginia legislature had in mind in enacting this law. To strike down the statute in this instance would exhibit disrespect for that legislative body and would allow the most far-fetched scenarios to serve as a basis for facially voiding public enactments. Some as-applied challenge may just possibly at some point in time prove meritorious, but we will await that *400 day rather than strike down a statute serving critical public safety goals on purely hypothetical — indeed fanciful — grounds. We expect legislatures to draft statutes that are narrow in focus, applicable to a specific subset of conduct, and reasonably clear. This statute meets those expectations. We do not expect legislatures to foresee and address every conceivable scenario to which a generally worded statute might be imagined to apply. Such laws would be difficult to draft and even more difficult to pass. The realities of the legislative process deserve some recognition and respect.
The First Amendment is a central and essential part of our constitutional life. For that reason, it becomes especially important to identify those instances when free speech values are truly implicated and those when they are not. Falsely identifying oneself as a policeman in order to get out of a speeding ticket is simply not the kind of expressive conduct the Framers of our first and one of our greatest amendments had in mind. Accordingly, the judgment of the district court is affirmed.

AFFIRMED.

. The dissent indicates that overbreadth analysis is unnecessary because the Supreme Court in Alvarez invalidated the Stolen Valor Act on its face without explicitly asking whether it was unconstitutionally overbroad. See post at 399-401, 401-02. Section 18.2— 174 is very different from the Stolen Valor Act, however, in that it not only has a plainly legitimate sweep but also serves interests repeatedly acknowledged by the Supreme Court to be compelling. See post at 396-98. Unlike in Alvarez, therefore, here the arguments for general facial invalidation are so weak that the only way Chappell can attempt to get at the question of invalidity is through an over-breadth challenge.

. The Stolen Valor Act provides that "[w]ho-ever falsely represents himself or herself, verbally or in writing, to have been awarded any decoration or medal authorized by Congress for the Armed Forces of the United States, any of the service medals or badges awarded to the members of such forces, the ribbon, button, or rosette of any such badge, decoration, or medal, or any colorable imitation of such item shall be fined under this title, imprisoned not more than six months, or both.” 18 U.S.C. § 704(b).

. This statute provides that "[wjhoever falsely assumes or pretends to be an officer or employee acting under the authority of the United States or any department, agency or officer thereof, and acts as such ... shall be fined under this title or imprisoned not more than three years, or both.” 18 U.S.C. § 912.
Chappell and the dissent argue that this statute is distinguishable from § 18.2-174 because it requires an offender not only to assume or pretend to be a peace officer, but also to "act[] as such.” See post at 400-01. But that misconceives the import of § 912 to our analysis. The Supreme Court's express recognition of § 912's validity in Alvarez is relevant not because § 18.2-174 is identical to § 912 (it is not), but rather because it shows that § 18.2-174, as part of a family of statutes aimed at deterring law enforcement impersonations, has a plainly legitimate sweep. Moreover, seven of the nine Justices concluding that § 912 is legitimate made no reference to the "acts as such” requirement, see Alvarez, 132 S.Ct. at 2554 (plurality opinion); id. at 2561-62 & n. 14 (Alito, J., dissenting), and even Justice Breyer’s opinion does not indicate that this requirement is the sine qua non of officer impersonation statutes, see id. at 2554 (Breyer, J., concurring in the judgment). At bottom, because Alvarez confirms that § 18.2-174 has a plainly legitimate sweep, and certainly where an offender pretends to be an officer and acts as such, we see no great profit in being drawn into an extended semantic debate about what constitutes "acting” and what does not.