COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:    Judges Huff, AtLee and Athey
Argued by videoconference

WILLIAM JOSEPH MORGAN

v.        Record No. 1139-20-1

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE GLEN A. HUFF
OCTOBER 5, 2021

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
A. Bonwill Shockley, Judge

Adam M. Carroll (Wolcott Rivers Gates, on briefs), for appellant.

Sharon M. Carr, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


William Joseph Morgan ("appellant") was convicted in the Virginia Beach Circuit Court

(the "trial court") for falsely pretending to be a police officer in violation of Code § 18.2-174.

His conviction was based on three primary facts:  (1) he drove a police interceptor model Crown

Victoria equipped with red, white, and blue emergency lights; (2) he flashed the vehicle's red

and white emergency lights and tailgated other motorists, causing one motorist to slow down

significantly in response; and (3) after his arrest, the police discovered that his vehicle contained

various police paraphernalia and equipment.  Further investigation showed that appellant was

intoxicated and had a firearm in a zipped backpack on the front passenger seat while operating

the vehicle, resulting in an additional conviction for carrying a concealed firearm while

intoxicated in violation of Code § 18.2-308.012.

Appellant asks this Court to reverse both convictions, arguing that the evidence was

insufficient to support either of them.  Additionally, with respect to his impersonation conviction,

he asserts on relevance grounds that the trial court abused its discretion in admitting evidence of

the police paraphernalia discovered in his vehicle after his arrest. Because none of the trial court's judgments were in error, this Court affirms.

## I. BACKGROUND

On appeal, "this Court consider[s] the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial." Williams v. Commonwealth, 49 Va. App. 439, 442 (2007) (*en banc*) (quoting Jackson v. Commonwealth, 267 Va. 666, 672 (2004)). Viewed through this lens, the evidence shows the following:

On March 6, 2019, Virginia Beach Detectives Joseph Otranto and Randall Bryant were in an unmarked police vehicle when they saw a white police interceptor model Ford Crown Victoria stopped at the intersection of Virginia Beach Boulevard and First Colonial Road. The detectives had operated Crown Victoria vehicles as police officers, and the Crown Victoria they saw appeared to them to look similar to other unmarked city police vehicles. In addition, the Crown Victoria bore a decal reading, "Police Interceptor," a marking borne by other Crown Victoria police interceptor vehicles in the Virginia Beach Police Department. Given the Crown Victoria's appearance and distinctive markings, the detectives initially thought it was an unmarked police vehicle until they saw its vanity license plate, which read "SPC-COP," indicating that the Crown Victoria did not belong to the Virginia Beach Police Department.

The detectives drove past the Crown Victoria, and at that moment, the Crown Victoria pulled out of its lane and maneuvered around the detectives while exceeding the speed limit. From there, the Crown Victoria abruptly changed lanes, nearly caused an accident, and then began to tailgate another motorist's vehicle. In response to the Crown Victoria's tailgating, the motorist pulled over onto the shoulder of the road. The Crown Victoria then went around the motorist and proceeded toward South First Colonial Road.

As the detectives continued to follow the Crown Victoria, they observed it swerve on the road at excessive rates of speed. When the Crown Victoria approached close to the rear of another vehicle, Otranto saw the Crown Victoria's emergency red taillights flash in an alternating fashion like "strobe lights"[1] and also noticed that the vehicle had other lights in the rear window that were not activated. The Crown Victoria then straddled the center line, and, according to Otranto, proceeded as police vehicles do when performing a traffic stop in that "[t]hey get right close to you and turn the lights on." The Crown Victoria drove for about 150 yards with its lights strobing, causing the motorist in front of it to slow down dramatically.

While the detectives were still following the Crown Victoria, Otranto radioed dispatchers for assistance. Virginia Beach Detective C. Gauthier responded to the dispatch alert, arrived at the scene of the pursuit, and conducted a traffic stop of the Crown Victoria. Otranto and Bryant parked behind Gauthier and told him what they had observed. Gauthier then approached the Crown Victoria and identified appellant as the driver. During the stop, appellant informed Gauthier that he had a gun in a backpack that was located next to him on the front passenger seat. Consequently, Gauthier detained appellant, searched the bag, and found a holstered handgun inside.[2] Gauthier then noticed that appellant smelled of alcohol and placed him under arrest.

After appellant's arrest, the Crown Victoria was towed to an impound lot where Gauthier performed an inventory search. In the front seat, Gauthier found a toggle switch for a light system

---

[1] Although no one testified that they saw the Crown Victoria's white headlights flashing, evidence in the record establishes that if the red taillights' emergency flashing was activated, the white headlights' emergency flashing was as well, and *vice versa*. Viewing the evidence in the light most favorable to the Commonwealth, this Court infers that when the red taillights were flashing, the white headlights were as well.

[2] Through a subsequent interview with appellant, Gauthier learned that appellant had a valid permit to carry a concealed handgun.

that plugged into the vehicle's cigarette lighter. That switch activated two strips of blue LED emergency lights that were affixed to the inside of the front and rear windows.[3]

Gauthier also found a number of law enforcement items in the Crown Victoria's trunk. Those items included the light bar that had been affixed to the vehicle's back window, side mirror covers with emergency lights that could be wired into the vehicle, a light system designed for mounting on the roof of the vehicle, another LED light bar, a spotlight, a fourteen-inch-long flashlight with the words "Police Security," a dog muzzle, and a dog vest marked "K-9 unit." Gauthier also found a duffle bag in the trunk that contained several firearm holsters, two safety vests, a firearm magazine pouch, gloves bearing the word "police," zip handcuffs, and a pair of sunglasses with a sunglasses case, both bearing the word "police." In the front of the Crown Victoria, Gauthier found a badge marked with a thin blue line and the word "Special Officer," a pamphlet for law enforcement services, a state police inspection form, chevrons, and appellant's concealed weapons permit.

At trial, appellant objected to the admission of the above evidence[4] as irrelevant, arguing that there was no evidence he had used any of it while operating the Crown Victoria and that it was not probative of any element of Code § 18.2-174. The Commonwealth responded that the items were probative of appellant's state of mind when he committed the offense and demonstrated that he had been "pretending" to be a law enforcement officer. The trial court overruled appellant's

---

[3] There is no evidence in the record that appellant operated these blue lights while driving the Crown Victoria on March 6, 2019.

[4] Appellant uses the phrase "after acquired evidence" to refer to the police-related items found in appellant's vehicle during the inventory search. As descriptive as that phrase may be, this Court does not adopt it given the potential for confusion with the "after acquired evidence" doctrine used in other legal contexts. See generally McKennon v. Nashville Banner Publishing Co., 513 U.S. 352 (1995) (discussing the "after acquired evidence" doctrine in federal employment law). Instead, this Court will use the phrase "post-seizure evidence" when referring to the police-related items found in appellant's vehicle during the inventory search.

objection, concluding that, unlike a jury, it "would be in a position to give" the appropriate weight to the post-seizure evidence.

Devin Bartnikowski, a "captain" for a private security firm, testified for appellant. He relayed that appellant had been a licensed and certified security officer for the security firm since September 2018 and had completed training courses with the Virginia Department of Criminal Justice, including "a K-9 training course." He further testified that appellant's work uniform included a golden shield badge, a patch marked with the words "Special Officer," and chevrons. Moreover, Bartnikowski claimed that appellant was permitted to install and operate red and white lights on his vehicle while on private property and write summonses for certain offenses.

Appellant moved to strike the evidence for both of his charges at the close of the Commonwealth's case-in-chief and at the close of all the evidence, both of which the trial court denied. After closing argument by counsel, the trial court found that appellant "pretend[ed] to be a law enforcement officer" and possessed "a concealed weapon" while intoxicated. Accordingly, it convicted appellant of both offenses and sentenced him to 545 days of incarceration with 515 days suspended.

This appeal followed.

## II. STANDARD OF REVIEW

Appellant's arguments against his convictions challenge the sufficiency of the evidence upon which those convictions are based.[5] "When reviewing the sufficiency of the evidence to

---

[5] In his third assignment of error challenging his conviction for carrying a concealed weapon while intoxicated, appellant attempts to frame the issue as a matter of pure statutory interpretation. But appellant's arguments supporting that assignment of error in substantial part raise the question whether appellant's firearm was "secured," whether it was "concealed," and whether it was "about his person." So more accurately put, that assignment of error presents a mixed question of law and fact, where the factual question is reviewed under the ordinary standards governing sufficiency cases and the law is reviewed *de novo*. See Myers v. Commonwealth, 299 Va. 671, ___ (2021).

support a conviction, [this] Court will affirm the judgment unless the judgment is plainly wrong or without evidence to support it." Bolden v. Commonwealth, 275 Va. 144, 148 (2008). On appeal, this Court "does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Wilson v. Commonwealth, 53 Va. App. 599, 605 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). Rather, the relevant question is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (quoting Jackson, 443 U.S. at 319).

In assessing whether the evidence was sufficient to find a defendant guilty beyond a reasonable doubt at trial, this Court "review[s] the evidence in the light most favorable to the prevailing party, including any inferences the factfinder may reasonably have drawn from the facts proved.'" Camp v. Commonwealth, 68 Va. App. 694, 701 (2018) (quoting Hannon v. Commonwealth, 68 Va. App. 87, 92 (2017)). This "examination is not limited to the evidence mentioned by a party in trial argument or by the trial court in its ruling. . . . [A]n appellate court must consider all the evidence admitted at trial that is contained in the record." Perry v. Commonwealth, 280 Va. 572, 580 (2010) (quoting Bolden, 275 Va. at 147). Finally, to the extent appellant's sufficiency arguments ask this Court to interpret Virginia's criminal code, they present a question of law that this Court reviews *de novo*. Eley v. Commonwealth, 70 Va. App. 158, 162 (2019) (questions of statutory interpretation reviewed *de novo*).

Appellant also challenges the trial court's admission of the post-seizure evidence—that is, the evidence gathered from the inventory search of appellant's car. Decisions as to the admissibility of evidence "lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion." Blankenship v. Commonwealth, 69 Va. App. 692, 697 (2019) (quoting Michels v. Commonwealth, 47 Va. App. 461, 465 (2006)). "[This Court] can only conclude that an abuse of discretion has occurred in cases where 'reasonable jurists could

not differ' about the correct result." Dalton v. Commonwealth, 64 Va. App. 512, 522 (2015)

(quoting Thomas v. Commonwealth, 44 Va. App. 741, 753, adopted upon reh'g en banc, 45

Va. App. 811 (2005)). In conducting this review, however, it is nonetheless this Court's duty to

ensure the trial court "was not guided by erroneous legal conclusions" in exercising its

discretion. Porter v. Commonwealth, 276 Va. 203, 260 (2008) (quoting Koons v. United States,

518 U.S. 81, 100 (1996)).

### III. ANALYSIS

A. Sufficiency of the Evidence for Appellant's Impersonation Conviction and the Relevance of
the Post-Seizure Evidence

Appellant contends the evidence was insufficient to support his conviction for pretending

to be a police officer in violation of Code § 18.2-174. To that end, he offers three principal

arguments. First, he asserts that even though his vehicle was equipped with red, white, and blue

strobe lights, he operated the red and white emergency lights only. Accordingly, he contends, an

observer would more readily assume that he was a firefighting or EMT official, given that the

vehicles used by those officials are equipped with red and white emergency lights. Second,

appellant supposes that in order to support his conviction, the trial court must have found some

"false announcement of police authority" on his part. Third, appellant contends that the

post-seizure evidence was not relevant to his guilt because he never used any item of that

evidence while driving his vehicle.[6]

---

[6] Appellant also argues that even if the post-seizure evidence was relevant, its prejudicial effect substantially outweighed its probative value and should have been excluded under Virginia Rule of Evidence 2:403. This Court does not consider that argument, however, because it is not encompassed within any of his assignments of error. See Riddick v. Commonwealth, 72 Va. App. 132, 145 (2020) ("Rule 5A:12(c)(1)(i) provides that '[o]nly assignments of error assigned in the petition for appeal will be noticed by this Court.'" (alteration in original)); Banks v. Commonwealth, 67 Va. App. 273, 289-90 (2017) ("This Court is limited to reviewing the assignment of error presented by the litigant . . . [and] do[es] not consider issues touched upon by the appellant's argument but not encompassed by his assignment of error."); see also Forest

Appellant's arguments do not involve any dispute over the trial court's findings of historical fact. Instead, they charge that even when all the facts are stipulated and viewed in the light most favorable to the Commonwealth, such facts cannot as a matter of law constitute impersonation of a police officer under Code § 18.2-174. To evaluate the merit of appellant's arguments, this Court must look to the language of Code § 18.2-174.

Before doing so, recitation of a few principles of statutory construction is in order. As is true with the interpretation of any statute, this Court's primary task in construing penal statutes is to "determine legislative intent." Phelps v. Commonwealth, 275 Va. 139, 142 (2008). "In determining that intent, words are to be given their ordinary meaning, unless it is apparent that the legislative intent is otherwise." Id.

If, however, there is any genuine ambiguity in the language of a penal statute, this Court construes the ambiguity strictly against the Commonwealth and resolves its interpretation in favor of the accused. De'Armond v. Commonwealth, 51 Va. App. 26, 34 (2007); see also Commonwealth Dep't of Motor Vehicles v. Athey, 261 Va. 385, 388 (2001) ("[Penal statutes] cannot be extended by implication or construction, or be made to embrace cases which are not within their letter and spirit." (quoting Berry v. City of Chesapeake, 209 Va. 525, 526 (1969))). But in doing so, this Court "will not apply an unreasonably restrictive interpretation of the statute that would subvert the legislative intent expressed therein." Armstrong v. Commonwealth, 263 Va. 573, 581 (2002) (internal citation and quotation marks omitted).

Appellant was convicted of violating Code § 18.2-174, which reads,

> Any person who falsely assumes or exercises the functions, powers, duties, and privileges incident to the office of sheriff, police officer, marshal, or other peace officer, or any local, city,

Lakes Cmty. Ass'n, Inc. v. United Land Corp. of Am., 293 Va. 113, 123 (2017) ("Like a well-crafted pleading, assignments of error set analytical boundaries for arguments on appeal, provide a contextual backdrop for [this Court's] ultimate ruling, and demark the stare decisis border between holdings and dicta.").

county, state, or federal law-enforcement officer, or who falsely assumes or pretends to be any such officer, is guilty of a Class 1 misdemeanor. A second or subsequent offense is punishable as a Class 6 felony.

Under the plain language of this statute, a person can be convicted for impersonating a police officer if he does one of two things (or a combination of both): (1) he falsely exercises the privileges "incident to" one's position as a law enforcement officer (the "privileges clause") or (2) he falsely "assumes or pretends" to be a law enforcement officer (the "pretending clause").

Appellant was convicted under the pretending clause,[7] the elements for which are twofold: (1) falsely assuming or pretending (2) to be a law enforcement officer. See Code § 18.2-174. There is no dispute as to what constitutes a "law enforcement officer" because the privileges clause itself lays out the personnel that fall within that term. See id. The only dispute is whether appellant falsely "pretended" to be a law enforcement officer.

The American Heritage Dictionary defines "false" as "[c]ontrary to fact or truth." American Heritage Dictionary 638 (4th ed. 2009). It defines "pretend" as "[t]o give a false appearance of; [to] feign." Id. at 1390. So what is clear from the statutory phrase "falsely . . . pretends" is that to be convicted under the statute, a person, at a minimum, must generally intend to do some act that falsely gives him the appearance of being a law enforcement officer.

What is less clear is whether the statutory phrase imposes an additional requirement that the accused have the *specific intent* to *deceive* another into believing he is a law enforcement officer. Some jurists have concluded that the pretending clause does require that the accused

_____

[7] In a substantial portion of its brief, the Commonwealth argues that appellant was guilty of falsely exercising the privileges of a law enforcement officer. Appellant calls foul play on the Commonwealth's doing so, asserting that because the trial court found him guilty under the pretending clause of Code § 18.2-174, this Court is prohibited from ascertaining whether he would be guilty under the privileges clause. This Court need not address appellant's concerns, however, because the evidence is sufficient to support his conviction under the pretending clause.

specifically intend to make another falsely believe he or she is a law enforcement officer.  See

United States v. Chappell, 691 F.3d 388, 393, 398-99 (4th Cir. 2012) (holding that the word

"falsely" in the pretending clause requires that the accused specifically intend to have another

take his false representation as true).  Others have concluded the opposite.  See id. at 407-09

(Wynn, J., dissenting) (opining that the pretending clause does not contain a *mens rea*

requirement that would take it "out from under a constitutional cloud").[8]

But this Court need not resolve the question whether the pretending clause contains a

specific intent requirement today.  Even assuming without deciding that the clause does contain a

specific intent requirement, the evidence against appellant is sufficient to show that he not only

generally intended to give himself the appearance of being a police officer, but that it was his

specific intent to deceive others into believing he possessed that status.

Before explaining why, it is appropriate for this Court to first determine *what* evidence

from the record can permissibly be used in its analysis, given appellant's argument that the trial

court abused its discretion in considering the post-seizure evidence relevant.  As noted, appellant

avers that the trial court's reliance on the post-seizure evidence was in error because he never

used that evidence while driving and it was not otherwise relevant to any element of the offenses

at issue.  By extension, he contends that this Court cannot rely on that evidence in determining

whether the evidence was sufficient to support his conviction.  This Court disagrees.

---

[8] If the pretending clause does not impose a specific intent requirement but instead simply
requires that a person generally intend to portray himself as a police officer, then constitutional
questions would arise (and indeed have) as to the statute's overreach into impermissible areas.
After all, Halloween partygoers dressed as police officers and children who play cops and
robbers "generally intend" to act as police officers.  See, e.g., Chappell, 691 F.3d at 408 (Wynn,
J., dissenting) (bemoaning the statute's potential application to partygoers, children "playing
cops and robbers on the front lawn," and actors), but see id. at 398-99 (emphasizing that the
presence of a specific intent requirement in Code § 18.2-174 "properly limits the scope of the
statute" and "undercuts" the claim that the statute applies to partygoers, children playing cops
and robbers, or actors).  But this Court does not have occasion to resolve that issue here, as
appellant did not raise a constitutional challenge in the trial court or on appeal.

"Evidence is 'relevant' so long as it has 'any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence.'" Kilpatrick v. Commonwealth, 73 Va. App. 172, 189 (2021) (quoting Va. R. Evid. 2:401); see also Creamer v. Commonwealth, 64 Va. App. 185, 194 (2015) ("Evidence is relevant if it tends to cast any light on a material point." (internal citation and quotation marks omitted)). "The scope of relevant evidence in Virginia is quite broad, as '[e]very fact, however remote or insignificant, that tends to establish probability or improbability of a fact in issue is relevant.'" Commonwealth v. Proffitt, 292 Va. 626, 634 (2016) (quoting Va. Elec. & Power Co. v. Dungee, 258 Va. 235, 260 (1999)).

Appellant correctly observes that he never used any of the items of the post-seizure evidence while driving his vehicle. For that reason, none of the post-seizure evidence would have been relevant to determining whether appellant committed the *actus reus* of the crime at issue. But assuming, as this Court does, that the statute imposes a specific intent requirement, then this Court cannot say the trial court abused its discretion in determining that the post-seizure evidence was probative of that intent. A simple question demonstrates the point: could a reasonable jurist conclude that a person driving a vehicle loaded with police paraphernalia is more likely to intend that his actions persuade others that he is a police officer than a person without such paraphernalia?

Certainly. Just as the possession of firearms, scales, and baggies can be illuminative of a person's intention to distribute drugs, so too can the possession of police gear be illuminative of a person's intent to make others believe he is a police officer. See McCain v. Commonwealth, 261 Va. 483, 493 (2001) (noting the possession of "equipment related to drug distribution" is probative of an "intent to distribute a controlled substance"). Therefore, in determining that the post-seizure evidence was relevant to appellant's intent, the trial court did not exceed the bounds

of what reasonable jurists could conclude.  See Dalton, 64 Va. App. at 522 ("[This Court] can only conclude that an abuse of discretion has occurred in cases where 'reasonable jurists could not differ' about the correct result." (quoting Thomas, 44 Va. App. at 753)).  And by making this conclusion with respect to the post-seizure evidence's relevance to appellant's intent, the trial court by definition could have rationally relied on that evidence in finding that appellant intended to impersonate a police officer.

In arguing that the post-seizure evidence was not relevant, appellant attempts to persuade this Court that Code § 18.2-174 is not a specific intent crime.  It is not clear how exactly that argument would support his case.  Even if he were right that Code § 18.2-174 does not contain a specific intent requirement, the statute would nevertheless contain a general intent requirement. See Rompalo v. Commonwealth, 72 Va. App. 147, 158 (2020) ("If a statute does not require a specific intent, a general criminal intent is still required.").  And if that is the case, then the question would remain whether the post-seizure evidence was relevant to show that he generally intended to act as a police officer.  See Winston v. Commonwealth, 268 Va. 564, 600 (2004) (defining general intent as the "intent to perform an act even though the actor does not desire the consequences that result"), cert. denied, 126 S. Ct. 107 (2005).[9]  For the same reasons that demonstrate why the post-seizure evidence was relevant to his specific intent, that evidence would, in fact, be relevant to his general intent.

---

[9] To further clarify, a person would "generally intend" to act as a police officer by simply doing some volitional act with the intent that the act give him the appearance of being a police officer.  As noted, a Halloween partygoer who dons a police costume could conceivably fall within a class of persons who "generally intend" to act as police officers.  Supra p. 10 n.8.  But the Halloween partygoer would not be criminally liable if Code § 18.2-174 contains a specific intent element, because such an element would require that the person not only intend to "act" as a police officer, but that he also have the added intent to *deceive* another into falsely believing he actually possesses that status.  See Chappell, 691 F.3d at 393, 398-99.

Having concluded the post-seizure evidence was relevant to appellant's specific and general intent and reasonably relied on by the trial court to support appellant's guilt as to those elements, the next question is whether the remaining evidence in the record is sufficient to conclude he committed the *actus reus* of the crime at issue. This Court holds that it was.

To be sure, certain aspects of appellant's conduct, standing alone, do not support the inference that he held himself out to be a police officer. Drunken and erratic driving can hardly be said to be a hallmark of police activity. And appellant's flashing of red and white emergency lights while driving was not necessarily an action exclusive to the police—as appellant correctly notes, red and white lights are readily associated with vehicles operated by fire marshals and other EMT personnel.[10]

But a narrow focus on those specific facts misses the forest for the trees. For one thing, even if the use of red and white emergency lights could be associated with non-police personnel, the same cannot be said for the *vehicle* appellant chose to drive: a police-interceptor model Crown Victoria that plainly had the appearance of being an unmarked police vehicle. Indeed, the police detectives who first saw the Crown Victoria testified that they were initially under the impression that appellant's vehicle was, in fact, an unmarked police vehicle.

For another thing, although appellant did not operate the vehicle's blue lights prior to his arrest, the fact remains that his vehicle was equipped with flashing blue emergency lights. Compare Code § 46.2-1022 (providing that law enforcement vehicles may be equipped with red, white, and blue flashing emergency lights), with Code § 46.2-1023 (providing that fire and other EMS vehicles may be equipped with only red and white emergency lights). Moreover, Otranto

---

[10] Impersonating firefighters and other public safety personnel is a separate offense under Virginia's criminal code. See Code § 18.2-174.1 ("Any person who willfully impersonates, with the intent to make another believe he is, an emergency medical services provider, firefighter, . . . fire marshal, or fire chief is guilty of a Class 1 misdemeanor. A second or subsequent offense is punishable as a Class 6 felony.").

testified that as appellant was flashing the red and white emergency lights, he noticed that the vehicle's rear window contained additional lights that were not activated. Given these facts, the trial court rationally could have inferred that an observer—whether the police detectives or any other motorist who observed appellant driving that night—would have been under the impression that the unused lights on a police-interceptor model Crown Victoria were blue emergency lights.

Additional aspects of appellant's conduct and other motorists' reactions only serve to support that inference. At various points, appellant operated his vehicle in a manner similar to how a police officer would when initiating a traffic stop: he exceeded the speed limit, straddled the center line, and activated strobing lights as he approached close behind other motorists. Immediately following those actions, one of the motorists appellant tailgated responded as though they were submitting to lawful police authority when they drastically slowed down their vehicle.

Properly understood, then, the totality of appellant's conduct paints the picture of an individual who: (1) drove a vehicle that had the appearance of being an unmarked police vehicle, (2) equipped that vehicle with red, white, and blue emergency lights, (3) flashed the vehicle's red and white lights, (4) operated the vehicle in a manner similar to a police officer conducting a traffic stop, and (5) caused a motorist to respond as people often do when they submit to lawful police authority. Accordingly, there was sufficient evidence for the trial court to rationally conclude that appellant committed the *actus reus* of giving himself the appearance of being a police officer. And for that reason, together with the evidence that supported the trial court's conclusion that appellant had the specific intent to make others believe he was a police officer, this Court leaves appellant's conviction under Code § 18.2-174 undisturbed.[11]

---

[11] Appellant's argument that he could not be convicted under Code § 18.2-174 unless he made a "false announcement of police authority" is without merit, as there is nothing in the

- 14 -

B. The Trial Court Did Not Err in Finding Appellant Guilty of Violating Code § 18.2-308.012

Appellant was also convicted of carrying a concealed firearm while intoxicated in violation of Code § 18.2-308.012. That statute provides, in relevant part, that "[a]ny person permitted to carry a concealed handgun who is under the influence of alcohol . . . while carrying such handgun in a public place is guilty of a Class 1 misdemeanor."

Appellant offers three arguments in support of his contention that the trial court wrongfully found him guilty of this crime. First, he claims that when the General Assembly used the word "permitted," it did not intend to encompass concealed weapons permit holders. Second, he avers that because the firearm was kept in a zipped backpack while he was driving a motor vehicle, Code § 18.2-308(C)(8)'s affirmative defense to unlawful possession of a concealed weapon applies and by definition means his firearm was not "concealed." Third, he asserts that even though the backpack containing the firearm was in the front passenger seat of the vehicle, the firearm was not "about his person" because he could not access it without first opening the backpack and taking it out of its holster. Because these arguments are without merit, this Court disagrees and affirms his conviction.

Appellant's first argument regarding the statute's use of the word "permitted" presents a strained understanding of that word. He does not dispute that persons with concealed firearm permits are, in an ordinary sense, "permitted" to carry concealed firearms. Instead, he charges that because the words "permit" and "permitted" have separate meanings, the General Assembly intended to exclude those with concealed weapons "permits" when it used the word "permitted."

---

pretending clause's elements that suggest such a requirement. But even if a "false announcement of police authority" requirement could be read into the clause, appellant's flashing of emergency lights and operating his vehicle similar to how police do when conducting a traffic stop would be more than sufficient to meet such a requirement.

That conclusion does not follow from appellant's premise. Merriam Webster's Dictionary—a source appellant relies on—defines "permitted" as "to consent to expressly or formally; to give leave; to make possible." The Merriam Webster Online Dictionary, https://www.merriam-webster.com/dictionary/permitted. It defines "permit" as "a written warrant or license granted by one having authority." The Merriam Webster Online Dictionary, https://www.merriam-webster.com/dictionary/permit. While these words have different definitions, that does not mean that those who are issued a "permit" are categorically excluded from being persons who are "permitted" to engage in some act. Quite the opposite. When a person is issued a concealed firearm "permit," he or she is plainly "given leave" to carry concealed firearms in Virginia (at least in most contexts, as this case demonstrates). Accordingly, because there is no dispute that appellant had a concealed weapons permit, it follows that he was "permitted" to carry a concealed firearm.

Appellant's second contention is that he was not carrying a "concealed" weapon because he falls under one of the statutory exceptions to Code § 18.2-308(A), which generally prohibits the carrying of concealed weapons. See Code § 18.2-308(A) ("If any person carries [a handgun] about his person, hidden from common observation . . . he is guilty of a Class 1 misdemeanor."). The exception he relies on is found in Code § 18.2-308(C)(8), which prevents a person from being convicted under Code § 18.2-308(A) if the person carries the "handgun while in a personal, private motor vehicle or vessel and such handgun is secured in a container or compartment in the vehicle or vessel."

In making this argument, appellant fails to recognize two important details. First, even if he were covered by the exception, that exception has no bearing on whether the firearm he carried was "concealed." See Myers v. Commonwealth, 299 Va. 671, ___ (2021) (noting that a handgun was "concealed" when it was "in a backpack that had been fully zipped"). Instead, it

simply provides that even when a person is carrying a concealed firearm, the person has an affirmative defense if he or she can prove the firearm was in a personal vehicle and secured in a container or compartment in the vehicle.  See id. at ___ (stating that Code § 18.2-308(C) provides "affirmative defenses" to the "subsection A crime").

Second, and more importantly, is the fact that the exception appellant relies on applies to sober persons only, not to individuals under the influence of alcohol or illegal drugs when they carry concealed firearms.  Specifically, the phrase "[e]xcept as provided in subsection A of § 18.2-308.012" that is stated in Code § 18.2-308(C) mandates that the statute's affirmative defenses do not apply if the accused engaged "in the prohibited conduct delineated in Code § 18.2-308.012(A)"—i.e., possessing a concealed firearm while intoxicated.  Hodges v. Commonwealth, 64 Va. App. 687, 696 n.2 (2015), abrogated on other grounds by Myers, 299 Va. at ___ n.2.  Therefore, given that appellant was permitted to carry a concealed handgun, and because it is undisputed that he was in public[12] and under the influence of alcohol, he was properly found in violation of Code § 18.2-308.012.[13]

### IV.  CONCLUSION

The trial court did not err in its decision to admit the post-seizure evidence or in its decision finding appellant guilty of impersonating a law enforcement officer.  Nor did it err in

---

[12] Unlike Code § 18.2-308(A), Code § 18.2-308.012 contains an "in a public place" element.  So even though appellant's presence in the public at the time of the offense is not disputed by the parties in this appeal, this Court acknowledges that there is a potential tension between the fact that the firearm was in a zipped backpack in a private motor vehicle and the statute's requirement that a firearm be carried "in a public place" in order to support a conviction.  This Court has not had occasion to interpret the statute's "in a public place" element in prior cases, and given what appellant chose to challenge at trial and on appeal, it does not have occasion to do so here.

[13] As noted, appellant argues that the evidence was not sufficient to support his conviction because, in his view, the firearm was not "about his person."  But the trial court need not have found that the firearm was about appellant's person because unlike Code § 18.2-308(A), Code § 18.2-308.012 does not contain an "about the person" element.

finding appellant guilty of carrying a concealed firearm while intoxicated.  Accordingly, this

Court affirms.

<u>Affirmed.</u>